UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>v.<br><br>JAMES A. PRATT, CONNIE L. PRATT-SCHMIDT aka CONNIE L. PRATT, HOPKINS MORTGAGE FUND, LLC, and DUSTIN KUKLA,<br><br>          Defendants. | Case No. 4:16-cv-00108-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

The United States of America, acting on behalf of the Farm Service Agency ("FSA") brought this action to foreclose on real estate mortgages and security agreements. FSA has a stipulated Order for Judgment with Hopkins Mortgage Fund, LLC (Dkt. 27) and a Default Judgment against Connie L. Pratt-Schmidt and Dustin Kukla (Dkt. 29). The only Defendant remaining in the case is James Pratt, who, with his wife (now divorced), executed the mortgages and security agreements in favor of FSA. The Court has before it FSA's motion for summary judgment (Dkt. 47) against James Pratt and Pratt's motion to seal various documents (Dkt. 67). Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented.

Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the motions without oral argument. *See* Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii). The Court issues this decision granting the motion for summary judgment and denying the motion to seal.

## PERTINENT FACTUAL BACKGROUND

Except as otherwise noted, the following facts come from the Declaration of Aaron W. Johnson. Dkt. 47-2. Early in 1990, FSA, formerly known as the Farmers Home Administration ("FmHA"), made a $90,000 loan to Defendant James Pratt and his wife so that they could purchase 40 acres with a house and outbuildings in Melba, Idaho. This property was formerly a dairy operation. Repayment of the loan was to begin on June 1, 1991, with annual payments of $8,979.00 for 25 years. As part of the loan terms, the Pratts agreed to pay all taxes when due and to give FSA receipts showing those payments.

The Pratts gave FSA a mortgage to secure the promissory note and encumber the real property. The Pratts also gave FSA a security interest in all of the dairy, milking, and farming equipment they owned or would afterwards acquire. FSA recorded both the mortgage and the security interest.

The Pratts defaulted on their repayment obligation when they paid only $1,000.00 in 1991 and $1,000.00 during the first half of 1992. The parties reamortized the loan in October of 1992. As part of the terms of the reamortization, the Pratts added as collateral, two residential rental lots in Nampa, Idaho, a hay crop, and a field corn crop. Again, in

1994, the Pratts defaulted on their repayment obligation under the reamortized terms. FSA sent the Pratts notice of the delinquencies and of the failure to pay 1991 and 1992 real estate taxes. In response to the notice, the Pratts paid $2,000.00 in November, 1994, and $2,500.00 in December, 1994. Also, on March 6, 1995, the Pratts paid $666.00.

On May 30, 1995, FSA received a check for $24,617.83 from the sale of one of the secured rental lots in Nampa. FSA placed the $24,617.83 into a Supervised Banking Account ("SBA") at West One Bank in Caldwell, Idaho. This SBA required signatures from FSA and one of the Pratts before any funds could be withdrawn. Pratt then asked FSA to release the sold rental lot from the mortgage. FSA agreed to do so and the sold lot was released on June 22, 1995. In July, 1995, FSA wrote three checks from the SBA account. One check paid the real estate taxes for 1992, 1993, and 1994. One check reimbursed Pratt $1,384.00 for work done on the home residence, and one check went to FSA for $6,575.00 to make the June 1995 loan payment.

On or about May 20, 1997, Pratt attempted to again reamortize his loan with FSA. FSA's Canyon County Committee declined to reamortize. Pratt appealed to the FSA State Committee. That committee also declined to reamortize the loan. Pratt appealed to the National Appeals Division ("NAD") of the United States Department of Agriculture ("USDA"). In 1998, the NAD determined that the local agency did not err in its decision.

On or about July 1, 1998, Pratt filed a Program Discrimination Complaint against FSA in an administrative action. FSA decided to not take any foreclosure action or other adverse action against Pratt until the Complaint was resolved by FSA's Office of Civil Rights. In December of 1999, FSA used $1,762.26 of the funds in the SBA account to

pay back real estate taxes at Pratt's request. Then, in October of 2000, FSA used $400.86 of the SBA funds to cover plumbing expenses in Pratt's residence.

For the next several years the parties remained in communication with each other. FSA did not initiate a foreclosure action because of Pratt's discrimination claim. Pratt did not make all of his annual payments and did not pay the real estate taxes on his property. In March of 2006, FSA paid the real estate taxes due for 2003 in the amount of $2,788.48 to avoid a pending tax deed. Again, in January of 2007, FSA paid the 2004 real estate taxes in the amount of $2,321.80. This pattern continued for several years with FSA paying the 2005 to 2013 real estate taxes three years or so after the taxes were due.

In May of 2011, Pratt informed FSA that he had been included in the *Keepseagle* class action lawsuit and settlement.[1] However, on October 30, 2012, FSA received notice from the *Keepseagle* Claims Administrator that Pratt's claim in the *Keepseagle* settlement was denied for failure to prove discrimination. Dkt. 47-8. Pratt filed for bankruptcy under Chapter 13 on February 26, 2013. FSA filed a Proof of Claim in the bankruptcy on March 14, 2013. Hopkins Mortgage Fund, LLC, filed an objection to Pratt's Chapter 13 plan and the bankruptcy was dismissed on May 2, 2013.

Pratt's discrimination claim was closed by USDA on February 27, 2013, because Pratt was involved in the *Keepseagle* class action and fell within the terms of that action's

---

[1] George Keepseagle initiated a class action lawsuit on behalf of Native Americans against the USDA claiming that the USDA discriminated against Native Americans in the USDA Farm Loan Program. The class action resulted in a $760 million settlement with the USDA.

settlement agreement. FSA received notice of the closure of the discrimination claim on April 23, 2013. FSA then began proceedings on Pratt's default by sending him a "Notification of Potential Non-Monetary Default" on June 12, 2013 and scheduling an appointment with Pratt for June 21, 2013, to discuss the servicing option for the delinquent loan. At Pratt's request, the meeting was rescheduled for June 27, 2013. Nothing was accomplished at the meeting and FSA sent Pratt letters outlining the servicing options available. These letters gave notice that the delinquent debt was now $126,987.06. Pratt applied for loan re-servicing, which FSA denied because the application was incomplete. On September 4, 2013, FSA sent Pratt an "Intent to Accelerate Notice," which informed Pratt that FSA was proceeding with foreclosure. On October 17, 2013, Pratt asked for reconsideration. FSA scheduled a meeting for October 30, 2013, to discuss reconsideration with Pratt. Pratt rescheduled the meeting twice, but it was finally held on November 22, 2013. The request for reconsideration was denied because Mrs. Pratt, now known as Ms. Schmidt, would not apply for servicing. On March 5, 2014, FSA sent a Notice of Acceleration of Farm Loan Program Accounts to both Pratt and Schmidt. On August 18, 2014, the Office of General Counsel referred the case to the U.S. Attorney's Office in Boise, Idaho for filing a foreclosure action. Pratt filed another Civil Rights complaint with FSA causing the foreclosure action to be put on hold. A Final Agency Decision on the discrimination claim was issued on December 9, 2015. That decision did not support a finding of discrimination. On or about January 28, 2016, FSA received clearance from the National Office to proceed with foreclosure.

The last voluntary payment made by Pratt on the loan was $6,575.00 made on July 26, 1995. As of December 19, 2016, Pratt is past due on the 2014 and 2015 real estate taxes in the amount of $3,644.06. Also, Pratt currently owes $1,858.76 for the 2016 taxes. That is a total due for real estate taxes of $5,502.82. Also as of December 19, 2016, Pratt has an unpaid balance on the loan of $133,095.07, with interest of $118,502.92, for a total of $251,597.99. FSA's Complaint seeks to foreclose on the real estate and milking equipment, but does not seek a deficiency judgment.

Pratt claims he made the loan payments for 1993, 1994, and 1995.[2] He does not claim to have made any further payments after 1995. Instead, he claims that FSA told him they would not give him any operating loans. Pratt states that he is refuting FSA's claim that he never made any full payments; however, he does not assert that he made every annual payment. Finally, he claims that FSA's accounting is inaccurate but provides no evidence of the alleged inaccuracies.

## LEGAL STANDARDS

### A.  Preliminary Matter

After the parties submitted their briefs relative to the motion for summary judgment, Pratt filed a "sealed document" (Dkt. 66) and a Motion to Seal (Dkt. 67) the sealed document temporarily "for [his] personal safety." Pratt did not initially serve the

---

[2] Pratt's claims are not in a sworn affidavit but merely stated in his Response to Plaintiff's Motion for Summary Judgment. Even if the claims were in an Affidavit, they do not create a genuine issue of material fact on the question of whether he is in default on the loan.

sealed document or the motion to seal on FSA.[3] FSA filed Plaintiff's Response to Defendant's Motion to Seal (Dkt. 68) informing the Court that FSA could not access either the sealed documents or the motion to seal. FSA also asked the Court to strike the two documents as untimely. Finally, FSA filed a Surreply Brief in Support of Summary Judgment. Dkt. 69.

The sealed document is really nothing more than a second responsive brief. Local Rule 7.1 states that there shall be a moving party's supporting brief, a non-moving party's responding brief, and a moving party's reply brief. There is nothing in the rules that permit a non-moving party to file a second brief, sealed or unsealed, particularly when that second brief was not served on the opposing party. There is nothing in the rules that permit a moving party to file a surreply brief. Additionally, the Court's Order of April 7, 2017, (Dkt. 56) states that Pratt's Response to FSA's motion for summary judgment was due no later than May 1, 2017. The sealed document (Dkt. 66) was not filed until June 9, 2017, long after that deadline had passed.

The Court finds the sealed document (Dkt. 66) and Plaintiff's Surreply (Dkt. 69) untimely and not permitted by Local Rules. Accordingly, the Court does not consider these documents for purposes of the summary judgment motion.

---

[3] FSA suggests that documents hand delivered to the U.S. Attorney by Pratt on June 19, 2017, might be the sealed documents Pratt filed as Docket 66 on June 9, 2017. The Court has no way to know if this suggestion is correct because the Court did not receive a copy of the hand delivered documents.

## B. Standard for Summary Judgment

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327, 106 S.Ct. 2548. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). There must be a genuine dispute as to any material fact—a fact "that may affect the outcome of the case." *Id.* at 248, 106 S.Ct. 2505.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255, 106 S.Ct. 2505. The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (*en banc*). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the non-moving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Devereaux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

Summary judgment is not precluded simply because there is a dispute over some facts in the case. Instead, the nonmoving party must present facts in support of the issues on which it would bear the burden of proof at trial, there must be probative evidence of those facts, and the facts must be uncontroverted or create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted to the moving party. *Id.* When the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed. R. Civ. P. 56(e). In determining admissibility

for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay. *Id.* (affirming consideration of hearsay contents of FSA's diary on summary judgment because at trial, FSA's testimony of contents would not be hearsay).

## ANALYSIS

### A. Summary Judgment

This is a foreclosure action brought in federal court because the United States is a party. FSA asks for summary judgment declaring that Pratt has defaulted on his loan obligation. FSA has submitted the loan documents and the Affidavit of Aaron W. Johnson, which outlines the details of Pratt's default. It also specifies the exact amount Pratt owes, including interest.

Here, the undisputed record shows that Pratt breached his contractual obligations to FSA under the parties' agreements, including the promissory notes and security agreements. FSA is entitled to enforce its rights under the promissory notes and security agreements, just as any party may enforce a right which arises due to a breach of contract. *Sirius LC v. Erickson,* 156 P.3d 539, 542 (Idaho 2007).

In responding to the summary judgment motion, Pratt does not dispute he is currently in default. In fact, he admits that he has not paid his taxes and is delinquent in some of his annual payments. Dkt. 32, ¶ 6. Instead of denying default, Pratt argues that he has made some full payments, USDA refused to give him operating loans for the farm,

he did not live rent free for years, the bankruptcy had nothing to do with the farm debt, and Aaron Johnson's accounting is inaccurate. Even if true, none of these claims create a genuine dispute of material fact.

The issue here is not whether Pratt ever made a full annual payment. The issues are whether he is currently in default for not timely paying taxes and whether he has made all annual payments on the loan. The undisputed evidence is that he never timely paid the real property taxes and that he has not made an annual loan payment for years.

The claim that USDA never gave him an operating loan is not material. There is nothing in any of the submitted loan documentation that infers that repayment of the loan was contingent upon Pratt receiving an USDA operating loan.

Whether Pratt lived on the property for years "rent free" and whether his dismissed bankruptcy was tied to the collateral of the loan does not impact the issue of whether he is in default on the loan.

Although Pratt argues that Aaron Johnson's accounting of the amount due on the debt is inaccurate, he gives no alternative accounting and points to nothing in the record to refute Johnson's accounting. Mere conclusions such as this are not sufficient to defeat summary judgment. Therefore, the Court will grant FSA's motion for summary judgment.

### B. Motion to Seal

Finally, the Court will address Pratt's Motion to Seal. Dkt. 67. The Ninth Circuit has held that there is a strong presumption of public access to judicial records. *See Kamakana v. City of Honolulu,* 447 F.3d 1172, 1178 (9th Cir. 2006); *Foltz v. State Farm*

*Mut. Auto. Ins. Co.,* 331 F.3d 665, 678 (9th Cir. 2010). A party seeking to file documents under seal bears the burden of overcoming that presumption. *Pintos v. Pac. Creditors Ass'n,* 605 F.3d 665, 678 (9th Cir. 2010). Overcoming that presumption requires a showing of compelling reasons supported by specific factual findings which outweigh the general history of access and the public policies favoring disclosure. *Id.* Here, Pratt wants "Defendant's Response to plaintiffs Document #65" (Dkt. 66) sealed "for [his] personal safety." The Court has reviewed that document carefully. It is basically a statement by Pratt reciting his version of the facts. In it he makes no threats against FSA or any individual and he does not describe any threats against him.[4] He has failed to provide compelling reasons supported by specific facts that outweigh the general history of access and the public policies favoring disclosure. The motion to seal is denied.

## ORDER

IT IS ORDERED THAT:

1. Defendant Pratt's Motion to Seal (Dkt. 67) is **DENIED.**
2. Plaintiff FSA's Motion for Summary Judgment (Dkt. 47) is **GRANTED.** The Court will enter judgment separately.

DATED: September 29, 2017

Honorable David C. Nye
United States District Court

---

[4] He does deny making threats years earlier but neither the threats or the allegations that they occurred have anything to do with the issues of this case. In fact, the alleged threats are only raised by Pratt, not by FSA.